IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOHNSON OBIEGBU,  :
    Plaintiff  :
    v.  : Case No. 3:10-cv-277-KRG-KAP
ROBERT WERLINGER, WARDEN, F.C.I.:
LORETTO, et al.,  :
    Defendants  :

Order, Report and Recommendation

Order, Recommendation

       The remaining defendant's motion for summary judgment, docket no. 96, should be granted. Plaintiff's motion for extension of time to December 14, 2013 to file his motion for summary judgment, docket no. 104, is granted. What is docketed as a response at docket no. 106 apparently is plaintiff's motion for summary judgment, and it should be denied.

       Plaintiff also filed a motion to appoint guardian or counsel at docket no. 108. If plaintiff actually presented evidence of impairment I would follow the rubric established in Powell v. Symons, 680 F.3d 301, 308 (3d Cir. 2012), but because there is none and plaintiff's claim of impairment and inability to conduct his litigation is contradicted by his actions in this case, plaintiff's motion, docket no. 108, is denied.

Report

       The history of this matter was set out in my Report and Recommendation at the Rule 12(b)(6) stage: Obiegbu has been in the federal prison system since 2008 and was housed at F.C.I. Loretto between December 2009 and May 2011 until he was transferred to

U.S.P. Canaan. The remaining claim from Obiegbu's complaint is that "from August 18, 2010, through June 1, 2011" Obiegbu suffered from scabies contracted from an inmate named Solomon placed in Obiegbu's eight man housing unit by defendant Wirfel. docket no. 36, Amended Complaint at 5. Obiegbu alleges that Wirfel deliberately placed Solomon in his "cube" to infect him to retaliate against Obiegbu for Obiegbu's filing of grievances. As I noted at the motion to dismiss stage, there is no Bivens action for retaliation, but Obiegbu's allegations state a claim under Carlson v. Green, 446 U.S. 14 (1980), which makes federal corrections personnel liable for damages if they are deliberately indifferent to an inmate's serious medical needs. For purposes of this motion the defendant does not dispute that scabies is a serious medical condition.

After discovery, however, it is clear that Wirfel was not deliberately indifferent to Obiegbu's serious medical needs. According to defendant's exhibits filed at docket no. 97 in support of the motion for summary judgment (which are mostly medical records either duplicated in plaintiff's motion for summary judgment or affidavits explaining the content of various records that plaintiff does not oppose with any evidence), Solomon did have scabies, was treated for them at his previous prison, and was in remission when he came to Loretto. docket no. 97 at 282-83, Exhibit 4, Sullivan Declaration ¶6(a)-(c). Solomon complained of

skin rashes in 2010, and was treated based on an impression of "dermatitis of unspecified cause," and other similarly agnostic diagnoses, but was not diagnosed with scabies. id., Sullivan Declaration at ¶6(d)-(f). Solomon was housed with Obiegbu on July 13, 2010 by Wirfel, who had no access to Solomon's medical history and was not aware of Solomon's medical history. docket no. 97 at 5, Exhibit 1, Wirfel Declaration at ¶5, ¶7. About a month after Solomon was housed with Obiegbu, one of the other inmates in the unit, Robert Kutzer (who according to Obiegbu never himself became infected), filed an informal grievance alerting corrections personnel that Solomon appeared to be infected with some skin disease. docket no. 97 at 293, Obiegbu deposition at 57-60; docket no. 97 at 300, Obiegbu Answer to Interrogatory 10. Solomon submitted an informal request to staff at the same time that complained about his skin condition. About a week later Solomon was diagnosed with scabies. docket no. 97 at 284, Exhibit 4, Sullivan Declaration ¶6(g). Solomon was removed, quarantined until August 31, and treated for scabies until what was believed to be a successful resolution in September 2010. docket no. 97 at 284-85, Exhibit 4, Sullivan Declaration ¶6(i)-(j)), and docket no. 97 at 289, Solomon Declaration at ¶¶3-4. There are no records of Obiegbu complaining about being infected by scabies during this period, although there was quite a bit of correspondence written by Obiegbu to the medical department containing Obiegbu's

complaints over the way the prison medical service was dealing with his complaints of eye trouble and lack of mobility in his left wrist: Obiegbu's complaints about scabies were limited to his grievances that he was suffering "psychological and emotional injury" as a result of being at "ground zero" of a "widespread scabies outbreak". docket no. 97 at 264, see also id. at 266.

According to defendant's exhibits in support of the motion for summary judgment, see docket no. 97, Exhibit 2, Sullivan Declaration, Obiegbu complained of many, many health problems before, during, and after his stay at Loretto, from "callouses on my pinky feet" docket no. 97 at 154, to excessive ear wax, docket no. 97 at 196, to dizziness, docket no. 97 at 202, to "something like [a] tumor growing larger each day" docket no. 97 at 269 (emphasis in original). In short, Obiegbu received regular examinations and a variety of treatments for many different complaints, yet there are no records showing that Obiegbu had scabies, nor are there even complaints by Obiegbu that he was infected by scabies until Obiegbu arrived at U.S.P. Canaan and almost immediately submitted two requests for immediate medical care for Obiegbu's headaches and for his skin rash. Medical personnel there diagnosed Obiegbu as having scabies and tinea cruris (commonly known as jock itch), at which point Obiegbu told medical personnel there that he had a rash "for the past 4-5 months." docket no. 97 at 187.

In May 2010, months before Solomon was housed with Obiegbu, Obiegbu was already complaining of a skin rash and sought a topical ointment for his complaints. docket no. 97 at 46. Obiegbu had also complained of dermatitis on his neck and bumps on his scalp, problems that he had previously treated by using coal tar shampoo and a prescription ointment, docket no. 97 at 50, 60. In October 2010 he received a refill of the shampoo and prescription ointment. docket no. 97 at 115-16. In October 2010 Obiegbu sought treatment specifically for his skin rash, which was diagnosed as a "rash and other nonspecific skin eruption" and not as scabies. He was given triamcinolone cream for his itching in November 2010 and in January 2011, and prescribed triamcinolone ointment from January 2011 through the rest of his stay at Loretto. docket no. 97 at 213, 242, 269. Obiegbu was transferred to U.S.P. Canaan in May 2011 and diagnosed in June 2011 with symptoms "highly suspicious of advanced scabies infestation." docket no. 97 at 185.

It is possible that Obiegbu was infected at Loretto by Solomon and his infection only manifested itself at Canaan, it is also possible that Obiegbu had scabies even before Solomon was housed with him and was misdiagnosed from May 2010, and it is also possible that Obiegbu was infected by Solomon and was misdiagnosed from August 2010, and it is also possible that Obiegbu was exposed to scabies from some other source after Solomon was removed from Obiegbu's cell, or even after Obiegbu left Loretto. But for

5

purposes of this matter the only material issue is whether there is evidence that Wirfel placed Solomon with Obiegbu, intending that Solomon infect Obiegbu or deliberately disregarding the risk that Solomon would infect Obiegbu. There is none. Nor is there evidence in the record that scabies is such a contagious or dangerous disease that not quarantining Solomon based on his previous medical history would support a permissible inference of deliberate indifference on the part of any other person who did have knowledge of Solomon's medical history. Compare Gates v. Cook, 376 F.3d 323, 334 (5th Cir.2004)(health dangers from mosquito-borne West Nile virus and from human waste sufficiently known that showing of inadequately screened windows and defective toilet system constituted Eighth Amendment violation); Haley v. Gross, 86 F.3d 630, 642 (7th Cir.1996)(risk of injury to plaintiff from his cellmate in a cell known to be deadlocked (off the general locking system) as a result of the cellmate's actions and who was acting "like he was crazy" and openly threatening to set cell on fire was sufficiently known to corrections officer to support deliberate indifference claim).

The key point is that because the deliberate indifference element of a Carlson v. Green claims requires proof that the defendant:

> knows of and disregards an excessive risk to inmate health or safety; the **official must** both **be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,** and he must also draw the inference.

6

Farmer v. Brennan, 511 U.S. 825, 837 (1994)(my emphasis), in order to survive summary judgment Obiegbu must show a genuine issue of fact that Wirfel "knew," not "should have known," that Solomon had scabies when he assigned him to the same unit as Obiegbu. Because Obiegbu does not point to any evidence in the record indicating Wirfel had any knowledge that Solomon had an active case of scabies in July 2010 when Solomon was moved to the same cell as Obiegbu, he cannot prove an indispensable element of a deliberate indifference claim[1]. Summary judgment should be entered for the remaining defendant and this matter ended.

Pursuant to 28 U.S.C.§ 636(b)(1), the parties are given notice that they have fourteen days to serve and file written objections to this Report and Recommendation.

DATE: 15 January 2014

Keith A. Pesto,
United States Magistrate Judge

---

1. In his brief the defendant suggests that Obiegbu must show that Wirfel specifically intended to use Solomon to infect Obiegbu as opposed to one of the other six inmates in the eight-man cell. docket no. 98 at 5. This is neither necessary nor sufficient. Although evidence of animosity between Wirfel and Obiegbu (as alleged by Obiegbu, who speculates that Wirfel's alleged comment "I got a package for you" means "I know that Solomon has scabies and put him in your cell to infect you") is relevant to the issue of motive, and the existence of a motive would make a claim that Obiegbu was Wirfel's target more plausible, there first must be evidence of Wirfel's knowledge. Because that is completely missing no jury could ever return a legal verdict against Wirfel. If however there were evidence that Wirfel knowingly introduced a contagious inmate into a cell to deliberately infect anyone it would not matter that the infection struck the "wrong" inmate.

7

Notice to counsel of record by ECF and by U.S. Mail to:

    Johnson Obiegbu, Reg. No. 36883-177
    F.C.I. Fort Dix
    P.O. Box 2000
    Fort Dix, NJ 08640